UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | M.J. No. 04-M-0228-JLA |
| ) | |
| DAVID JORDAN, ) | |
| ) | |
| Defendant. ) | |

## GOVERNMENT'S MEMORANDUM OF LAW REGARDING DETENTION

The United States of America, by and through its attorneys, United States Attorney Michael J. Sullivan and Assistant U.S. Attorney John J. Farley, hereby submits this memorandum of law in response to questions posed by the Court at the detention hearing regarding conditions of release that may address concerns regarding obstruction of justice.

### BACKGROUND

The defendant in this case is a Malden narcotics detective who is charged with participating in a conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846. Evidence presented at the detention hearing showed that the defendant participated with three other individuals to orchestrate the theft of three kilograms of cocaine from a narcotics trafficker on December 24, 2003, at the Malden Medical Center. Evidence further showed that the defendant embarked on a series of obstructive acts, including making false statements to a Special Agent of the Drug Enforcement Administration. These obstructive acts culminated on May 19, 2004, when (in a

consensually recorded conversation), the defendant urged a co-conspirator not to say anything to law enforcement, to stick to a pre-arranged cover story, and to tell another co-conspirator to keep his mouth shut.  The defendant also warned the co-conspirator not to be a "rat" against him and not to "throw [him] under the bus."  There can be little question about the intimidating tone of the defendant's voice.

## DISCUSSION

Due to the nature of the charge, there is a presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."  18 U.S.C. § 3142(e).  Here, while the defendant may have been able to present some evidence rebutting the presumption that he is a flight risk, he has not rebutted the presumption of dangerousness.  Additionally, the defendant has not been able to counter the government's evidence that there is a serious risk that the defendant "will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate or attempt to threaten, injure, or intimidate, a prospective witness or juror."  18 U.S.C. § 3142(f)(2)(B).

The First Circuit has made clear that detention is appropriate when a defendant's release creates "an unusual risk of obstruction of justice."  United States v. Acevedo-Ramos, 755 F.2d 203, 206 (1st Cir. 1985).  Thus, if there is a "serious risk

2

defendant will engage or attempt to engage" in obstructive conduct and no appropriate conditions can reasonably assure the safety of any other person and the community, detention is appropriate. United States v. Ploof, 851 F.2d 7, 12 (1st Cir. 1988).

There do not appear to be an abundance of cases that address the types of release conditions that might reasonably prevent a defendant from obstructing justice. However, several courts have found highly stringent proposed bail conditions to be insufficient to prevent against obstruction of justice. For example, in United States v. LaFontaine, 210 F.3d 124 (2d Cir. 2000), the Second Circuit affirmed an order of detention of a white collar defendant with no connection to narcotics or organized crime and no history of violence when there was evidence that the defendant had attempted to obstruct justice in a nonviolent fashion. Id. at 134. The Second Circuit agreed that home confinement, electronic monitoring, a wiretap on the defendant's telephone, and relocating the defendant to another state were not sufficient conditions to ensure the safety of the community. Id. at 134.

Similarly, a district court rejected a proposed $18 million appearance bond, signed by 18 sureties and secured by $8 million in property (owned by the defendant, his friends, and his neighbors), that included conditions of home detention,

3

electronic monitoring, video surveillance, a 24-hour guard, recording of telephone conversations, random searches, restriction of visitors to an approved list, and a prohibition of cellular telephones and other communication devices. United States v. Agnello, 101 F. Supp.2d 108, 114 (E.D.N.Y. 2000). The court found that "[t]hese measures, albeit elaborate, do not assure the safety of other persons and the community in a manner remotely commensurate to pretrial detention in a government facility." Id. The court noted that the defendant's "activities inside the house will not be observed, nor is it reasonable to believe that the defendant could not evade monitoring by obtaining access to communication devices and employing other methods to carry on criminal activity and endeavor to obstruct justice." Id. The court found that "[t]he safety of witnesses and others, and the integrity of the trial, should not be jeopardized by measures that clearly fall short of the safety provided by pretrial detention." Id. The court specifically rejected wiretapping the defendant's telephone as an option, noting that this would be an extraordinary burden on government resources that is beyond what is contemplated by the Bail Reform Act. Id. at 116.

Finally, as the First Circuit noted in United States v. Tortora, 922 F.2d 880, 887 (1st Cir. 1990), a court is not required to release a defendant on bond "if the only combination

4

of conditions that would reasonably assure societal safety consists of heroic measures beyond those that can fairly be said to have been within Congress's contemplation." Id. Thus, in Tortola (a case addressing dangerousness), the First Circuit found house arrest with electronic monitoring, limited visitors, and telephone monitoring to be flawed since the conditions were subject to easy circumvention or manipulation. Id. at 887.

The concerns discussed in the above-referenced cases apply with equal force to this case. The evidence presented by the government shows that the defendant has attempted to obstruct justice by lying to investigators, crafting a false story, and directing others not to speak with law enforcement. He was caught on tape making statements that instruct an individual not to communicate truthful information to law enforcement, an apparent obstruction of justice in violation of 18 U.S.C. § 1512.[1] Having heard the recording of the defendant's own statements, the Court is in a good position to assess the substantial obstruction risk that the defendant presents. As

---

[1] For example, the obstruction of justice statute states that it is unlawful to knowingly use intimidation, threats or to corruptly persuade another person with the intent to hinder, delay, or prevent the communication to a law enforcement officer of the United States of information relating to the commission of a federal offense. See 18 U.S.C. § 1512(b)(3). At a minimum, statements such as "Stick to your thing," "You can't tell them I was involved," "tell Skeeter to keep his mouth shut," and "you better not be a rat on me" were efforts by the defendant to prevent the communication of information about the commission of the charged drug offense to federal law enforcement agents.

5

with the cases discussed above, it is simply not possible to craft conditions of release that could reasonably assure the Court that the defendant will not obstruct or attempt to obstruct justice in the future.

The defendant was a sworn law enforcement officer who has shown that his word cannot be trusted: he has participated in drug conspiracy with a number of individuals, including a convicted drug dealer; he possessed a stolen gun; he admittedly used marijuana; and he attempted to obstruct a federal investigation. None of this behavior is legal, but it is even more reprehensible given that the defendant was a police officer and that he used his position to commit the charged offense. In light of the fact that this sworn law enforcement officer has been involved in serious criminal activities, there is simply no reason for the Court to believe his promise that he now can be trusted to be a law abiding citizen. <u>Tortora</u>, 922 F.2d at 887. Accordingly, the defendant should be detained pending trial.

**CONCLUSION**

For all of the foregoing reasons, as well as the reasons articulated in the detention hearing, the government requests that the Court detain defendant David Jordan pending trial.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: _____
JOHN J. FARLEY
Assistant U.S. Attorney

Dated: May 28, 2004

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by facsimile and by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

> Thomas Drechsler, Esq.
> 50 Redfield Street
> Boston, MA 02122
> Fax - (617) 265-3627

This 28th day of May, 2004.

_____
JOHN J. FARLEY
ASSISTANT UNITED STATES ATTORNEY

8