UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | CRIMINAL NO. 04-10194-RCL |
| DAVID JORDAN ) | |
| and ) | |
| ANTHONY BUCCI ) | |
| Defendants ) | |

### DEFENDANT DAVID JORDAN'S SUPPLEMENTAL OBJECTIONS TO THE GOVERNMENT'S PROPOSED EXHIBITS CONTAINING REDACTIONS

The defendant, David Jordan ("Jordan"), hereby supplements his previously filed objections to the Government's exhibits that they intend to introduce at the time of trial. Without waiving his right to any further objections at that time of the introduction of said exhibits, Jordan objects to those particular tapes and transcripts that contain redactions and editorial comments. The objections are based on the fact that the Government has arbitrarily selected which portions of the tape to include and which to eliminate. A review of the redacted portions show that conversations become significantly fragmented and that matters are taken out of context. More sepcifically, Jordan objects to the following Exhibits:[1]

1.   **Proposed Exhibit #6B (Transcript of Call #485 of Ruiz Wire)**

Jordan objects to the admission of this conversation on the grounds that it is hearsay evidence. This conversation occurred between Ruiz and his wife, Irene following the rip off of Ruiz's drugs. This statement does not fall within any exception to the hearsay rule. Federal Rule of Evidence 801(d)(2)(E) which allows a statement of a co-conspirator during the course

and furtherance of the conspiracy does not apply in this instance. Here, neither Ruiz or Irene are part of the alleged conspiracy.

Additionally, the conversation does not fall within the "excited utterance" exception. This exception allows statements "relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition." *Fed.R.Evd. 803(2)*. Although an excited utterance need not be contemporaneous with the startling event to be admissible, it must be "contemporaneous with the excitement engendered by the startling event." *U.S. v. Joy*, 192 F.3d. 761 (7th Cir. 1999) (citations omitted). Here, the conversation was not sufficiently spontaneous or impulsive.

An additional problem with this exhibit is that the tape itself is not in English. (Exhibit 6A). It is difficult to determine the accuracy of the transcription. Additionally, when reading the English version of the conversation, one is unable to decipher which word or part of the conversation is emphasized by the speaker.

For all these reasons, Jordan contends that this entire conversation is inadmissible.

2.      **Proposed Exhibit 8B (Transcript of Call #549 of Ruiz Wire)**

This exhibit consists of a conversation between Jon Minotti and Carlos Ruiz. The Government seeks to include the beginning of the conversation on page 1 and eliminate an entire section, up to and including the top of page 3. The conversation starts out with Ruiz mentioning "the cop," and then skips to a discussion about Ruiz "wanting that shit tomorrow." Under the doctrine of completeness (Fed.R.Evid. 106), Jordan argues that the redacted portions on page 2

---

[1] The Exhibits at issue are attached hereto and contain the specific deletions at issue. The Exhibit numbers correspond to the Government's supplemental exhibit list.

should be included in order to place the subsequent excerpt in context. *U.S. v. Millan*, 230 F.3d. 431 (2000).

Similarly, the Government seeks to include an excerpt on page 3, wherein Minotti ("Jon") states, "Dude, me and you can go back there and look for it," but then, arbitrarily omits a contradictory statement by Minotti on the following page. ("Let me just tell you something…"). In fairness, Minotti's contradiction should be considered by the jury. If not, a deliberate distortion of the conversation is created. Therefore, Jordan proposes that the entire portion of the conversation on page 3 be admitted, up to and including the top of page 4.

The Government also seeks to redact the threats of violence made by Ruiz which is highly unfair given the circumstances of his plea agreement. On page 3, of the plea agreement (Government's proposed Exhibit 20), the Government states that it will "recommend applying §5C1.2 of the Sentencing Guidelines. This particular section allows for a reduction if the defendant did not use credible threats of violence. Therefore, the portion of the transcript containing the threats speak to the degree of inducement and should be considered by the jury. Thus, it is Jordan's contention that page 4, starting with Ruiz stating, "Yeah, but why? If I don't have my shit tomorrow…" and including pages 5 through 10, should be considered in their entirety.

Not only are these portions of the conversation rife with threatening remarks by Ruiz but, they also contain instances of Minotti lying to Ruiz. Furthermore, without them, the conversation becomes fragmented and difficult to follow. For instance, the Government includes portions where references are made to Jordan and then deletes sections where the two speakers are clearly talking about somebody else. The redactions result in a confusion that may lead to a

misunderstanding of who is actually being discussed. This can only be avoided by introducing the full text of the conversation. *Millan*, 230 F.3d. at 434.

3.  **Proposed Exhibit 16B (December 26, 2003; 1:30 p.m. Conversation; Jordan/Drouin)**

This exhibit consists of a conversation between Jordan and Special Agent Drouin. Jordan objects to the Government's deletions on the bottom of page 3 to the top of page 4 (ending with JORDAN: "He can't deal with the kid anymore…") and to the deletion on the top of page 5. Jordan objects to these redactions because the deleted portions explains the beginning of the conversation on pages 1 and 2 where he is telling the agent about his informant setting up Ruiz. Without the deleted sections, the conversation jumps from Jordan asking about Ruiz to Jordan showing up at Malden Hospital. There is no explanation as to the how or why Jordan came to be at the scene. Similarly, the deletions on page 7 not only explain Jordan's presence at the hospital but, also describe his relationship with Minotti and should be included.

The Government also seeks to omit those portions where Agent Drouin lies to Jordan by the Government's on admission in its Grand Jury presentation (page 8, starting with JORDAN: Was he doing anything…" to page 9 ending with S/A DROUIN: "Nah, Ya know I should've…"). It is unfair to conceal from the jury the fact that the agent lied to Jordan in an attempt to obtain information. Also, as to page 9, the Government seeks to eliminate the sections where Jordan describes how he came to know Minotti (bottom of page 9 to the top of page 10). The deletion creates the unfair impression that Jordan relied upon an informant whom he did not really know when trying to apprehend Ruiz. The rest of the conversation makes it clear that the contrary is true. *Fed.R.Evid. 106*.

Jordan further objects to the deletions noted on the bottom of page 11 (S/A DROUIN: "How did you know I was looking for Ruiz…") to the top of page 12 (JORDAN: "Al Gave me your number…"). He also objects to the deletions from the middle of page 12 (S/A DROUIN: That sucks… so…so you …How much do you think…) to the top of page 13. Again, the redacted portions put prior conversation in context by explaining how Jordan came to be at the hospital, what he did as follow-up and why he contacted Drouin in the first place.

Lastly, as to this exhibit, Jordan objects to the parenthetical editorial comments found on page 1 ("sighs") and page 2 ("trying to catch his breath"). This is nothing more than the transcriber's assumption of what may have happened. The later characterization is particularly egregious because it attempts to create an impression of nervousness. This type of information simply invades the province of the jury. Additionally, in this proposed exhibit, the Government notes where the deletions occur in the conversation by using three small dots to the extreme left of the page. This does not clearly indicate that an entire portion of the conversation has been omitted. However, in the Government's Exhibit 8B, it clearly delineates where the omissions occur and it is Jordan's position that this method should be used in each exhibit.

4. **Proposed Exhibit 17B (December 26, 2003; 5:00 p.m. Conversation; Jordan/Drouin)**

This exhibit includes another conversation between Jordan and Drouin wherein Drouin is informing Jordan that Minotti is in danger and should probably leave town for awhile. Jordan objects to the redactions contained on pages 3 through 6. First, the deletions on these pages include those parts of the conversation wherein the agent is telling Jordan to inform Minotti to get lost for awhile and Jordan's response that Ruiz has already threatened Minotti and has been to his house. Without this information, it appears that Jordan is concealing the fact that he

5

knows Minotti, has been in touch with him, and is aware that Ruiz had been to the house. Secondly, the conversation jumps from Jordan describing how Minotti called him on a whim to Drouin stating that he wanted to let him know that they are talking about the guy (Minotti). The conversation is not only fragmented but doesn't even make sense without the deleted portions.

    The defendant further objects to the editorial comments contained on pages 1 and 2 ("confused" and "laughs").

    5.    **Proposed Exhibit 18B (December 31, 2003; 1:35 p.m. Conversation; Jordan/Drouin)**

    As to this Exhibit, Jordan objects to the redactions on the top of page 4 to the middle of that same page (ending on page 4 with JORDAN: "He doesn't want to talk to me…"). The Government seeks to include the portions of this conversation wherein Jordan is asked for his notes on the incident, a description of one of the vehicles, and the identification of one of the persons ("that Italian guy"). Jordan contends that the part of the conversation where he informs the agent that he has spoken with Minotti and that Minotti does not want to get involved should also be included. By deleting that portion it appears that Jordan is withholding information when in fact he has spoken to Minotti as he was instructed to. This partial disclosure results in unfairness to the defendant.

    6.    **Proposed Exhibit 24B (May 19, 2004 Transcript of Body Recorder)**

    As to this exhibit, Jordan objects to the parenthetical information on page 2 ("sighs'), page 4 ("rustling of clothing"), and page 9 ("to himself"). Again, these are merely editorial comments that contain inadmissible information.

        Respectfully Submitted:

        Defendant,
        DAVID JORDAN,
        By his attorney,


        /s/ Thomas Drechsler
        Thomas Drechsler, Esq.
        B.B.O. #134840
        FINNERAN, BYRNE & DRECHSLER, L.L.P.
        Eastern Harbor Office Park
        50 Redfield Street
        Boston, MA 02122
        Tel. (617) 265-3900

DATED: March 19, 2006

## CERTIFICATE OF SERVICE

    I hereby certify that a true copy of the foregoing document has been served the above date, electronically through the ECF system, upon Assistant U.S. Attorney John T. McNeil, and to all registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.


        /s/ Thomas Drechsler
        _____
        Thomas Drechsler