UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA  )   )  v.  )   )  DAVID JORDAN  )  and  )  ANTHONY BUCCI,  )  Defendants  ) | CRIMINAL NO. 04-10194-RCL |

### Government's Opposition to Defendant Jordan's Motions for Acquittal

The United States of America, by and through Assistant United States Attorneys John T. McNeil and S. Theodore Merritt, respectfully files this opposition to Defendant Jordan's various motions for judgment of acquittal pursuant to Fed.R.Crim.P. 29. [Doc. No. 251, 252, 253, 266].

Jordan argues, in a cursory fashion, that the government failed to prove each count of the indictment beyond a reasonable doubt. In order to avoid unnecessarily repeating all of the evidence adduced at trial, the government submits this abbreviated response which highlights the key evidence. However, if the Court desires more detailed briefing of the evidence, the government requests leave to supplement this opposition.

The First Circuit has noted that the standard for reviewing a Rule 29 motion is as follows:

> a court must determine whether, after assaying all the evidence in the light most amiable to the government, and taking all reasonable inferences in its favor, a rational factfinder could find, beyond a reasonable doubt, that the prosecution successfully proved the essential elements of the crime. Under this formulation, a court considers all the evidence, direct and circumstantial, and resolves all evidentiary conflicts in favor of the verdict. Thus, [the court does] not weigh the credibility of the witnesses or assess whether the prosecution succeeded in eliminating every possible theory consistent with the defendant's innocence. Accordingly, as long as the guilty verdict finds support in a plausible rendition of the record, it must stand.

United States v. Moran, 312 F.3d 480, 487 (1st Cir. 2002)(citations and quotations omitted); United States v. O'Brien, 14 F.3d 703, 706 (1st Cir.1994). Moreover, the testimony of a single government witness is sufficient to meet the test under Rule 29. See United States v. Rothrock, 806 F.2d 318, 320-21 (1st Cir. 1986); United States v. Johnson, 412 F.2d 753, 756 (1st Cir. 1969).

**Count I**

Jordan argues that there was insufficient evidence of his intent to join the conspiracy to distribute the cocaine stolen from Ruiz. However, among other evidence introduced at trial, Mr. Minotti testified: he told Jordan of Bucci's plan to rob a drug dealer of narcotics some time before December 24, 2003, and requested that Jordan participate; he discussed the plan with Jordan on at least one other occasion before Jordan agreed to join the conspiracy to rob Ruiz; he, Bucci, and Muolo met with Jordan on the morning of December 24, 2003, at the Malden Medical Center to plan the robbery in detail and to discuss their various roles; Jordan selected the location for the robbery to take place because it provided a place for Minotti to run from the scene with the cocaine; Jordan discussed with his co-conspirators at that meeting how the cocaine robbery was to be conducted and each of their roles; Jordan wanted to be paid for his role in the conspiracy and wanted to be paid quickly; and Jordan knew that he was to be paid from the proceeds of the cocaine sale and, after receiving half of what he expected to be paid, was angry when he thought Bucci was selling the stolen cocaine for too little. Moreover, the jury could reasonably infer that any theft of such a large quantity of cocaine had to be for the purpose of its subsequent distribution. Finally, both Mr. Minotti and Mr. Ruiz testified that the substance stolen from Ruiz was cocaine and that it weighed three kilograms. From this evidence alone, in addition to inferences drawn from it, rational factfinder could find, beyond a reasonable doubt, that the prosecution successfully proved the

essential elements of Count I.

**Count II**

Similarly, Jordan argues that the government failed to introduce sufficient evidence that he aided and abetted the possession of cocaine with intent to distribute. In addition to the testimony outlined above, Mr. Minotti testified that Jordan agreed to detain Ruiz while Minotti ran from the location with the three kilograms of cocaine. Mr. Ruiz testified that Jordan did precisely that: Jordan held Ruiz at gunpoint while Minotti made off with three kilograms of cocaine. This testimony, as well as that outlined above, and inferences drawn from it, are sufficient the meet the Rule 29 standard.

**Count III**

Jordan next argues that there was insufficient evidence of the connection between the firearm he admitted carrying and the underlying drug trafficking crime. However, as noted above, Ruiz testified that Jordan used his firearm to detain him while Minotti ran with the cocaine. Specifically, Ruiz testified that Jordan approached him with his gun drawn and ordered Ruiz to shut off the car and to get out of his vehicle. Minotti testified that Jordan's primary role in the drug trafficking crime was to pretend he was conducting a legitimate law enforcement interdiction and to detain Ruiz for the time necessary for Minotti to get away with the cocaine. This testimony, and that outlined above, is sufficient to established that Jordan employed his firearm to carry out his core role in the drug trafficking crimes.

**Count IV**

Jordan argues that there was insufficient evidence of his intent to attempt witness tampering. Yet Minotti testified that shortly after the robbery Jordan told him to lie to law enforcement officers

if questioned; Minotti was instructed to tell others that he was a confidential informant for Jordan and that he was not at the Malden Medical Center during the robbery. In addition, the body wire recording from May 19, 2004, reveals not just that Jordan encouraged Minotti to tell Muolo to keep his mouth shut, but that Jordan told Minotti to maintain his lie that he was not at the Malden Medical Center. Moreover, the recording reveals that Jordan encouraged Minotti, and Muolo indirectly, to "stick together" in not speaking with "the feds."

In keeping with Arthur Andersen LLP v. United States, 125 S.Ct. 2129 (2005), the jury was instructed that it must find beyond a reasonable doubt that Jordan acted with a "consciousness of wrongdoing and an improper purpose," when he sought to persuade Minotti, and Muolo indirectly, from communicating truthful information to federal law enforcement officers. His earlier instructions to Minotti to lie, coupled with own direct involvement in the conspiracy and the subsequent pressure he placed on his coconspirators not to speak with officers, was ample evidence to establish such a consciousness of wrongdoing and an improper purpose.[1]

**Counts VI-VIII**

Finally Jordan claims that there was insufficient evidence of his intent to make three false statements to DEA Special Agent Jean Drouin. With respect to Count VI, Mr. Minotti's trial testimony revealed that Jordan not only knew that the "Italian" person present in the Malden

---

[1] Jordan's reliance on the Third Circuit's split panel decision in United States v. Farrell, 126 F.3d 484, 488 (3rd Cir. 1997) is misplaced. First, Farrell was decided before Arthur Anderson, and the district judge, who sat without a jury, did not evaluate the evidence in light of the requirement that the defendant must act with a consciousness of wrongdoing and an improper purpose. Moreover, the First Circuit recently affirmed the denial of a Rule 29 motion in a closely analogous case, where an officer told his co-conspirators to lie and not to talk to federal law enforcement officers. See United States v. Byrne, 435 F.3d 16, 26 (1st Cir. 2006).

Medical Center parking lot was Anthony Bucci, but that Minotti had spoken with Jordan about Bucci on prior occasions and that Jordan had met earlier that morning with Bucci to plan the robbery. Moreover, the jury could infer that Jordan did not run Bucci's name for warrants while at the Malden Medical Center because Jordan was league with Bucci and did not want a record made of Bucci's presence in the lot. With respect to Count VII, Minotti testified that Jordan knew that Minotti would be in the parking lot to run with the drugs as part of the robbery, and then instructed Minotti to lie to others about his presence in the lot. With respect to Count VIII, the jury could reasonably infer that since Jordan was only a few feet from Bucci's distinctive black Mercedes Benz and was an experienced law enforcement officer that he would remember the color of Bucci's car. This inference is further supported by Jordan's statements in a recorded conversation that he had a clear recollection of the color of Ruiz's car even though he observed that car for a shorter period of time.

**Conclusion**

For the reasons set forth above, the government respectfully requests that the Court deny Defendant Jordan's motions pursuant to Fed.R.Crim.P. 29. As noted above, this opposition only briefly highlights the testimony which supports the jury's verdict. To the extent the Court desires greater detail, the government respectfully request the opportunity to supplement this opposition.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

Date: May 3, 2006    By: /s/ John T. McNeil
JOHN T. MCNEIL
S. THEODORE MERRITT
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

    I, John T. McNeil, Assistant United States Attorney, do hereby certify that this document, filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non registered participants on this date.

/s/ John T. McNeil
JOHN T. McNEIL
Assistant U.S. Attorney