UNITED STATES DISTRICT COURT

FILED
IN CLERKS OFFICE

2006 MAY 23  A 10: 53

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>　　　　Plaintiff　　　　　　　　　)<br>　　v.　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>ANTHONY BUCCI,　　　　　　　　)<br>　　　　Defendant　　　　　　　　)<br>＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿) | CRIMINAL ACTION<br><br>No: 04-cr-10194-RCL |

## MOTION OF PAUL A. DECOLOGERO TO VACATE PROTECTIVE ORDER IN PART

Paul A. DeCologero hereby moves that the Protective Order entered on January 31, 2005 be lifted in part. Mr. DeCologero contends that some of the documents disclosed pursuant to that order are material to his guilt or innocence and should have been disclosed by the government in the criminal case, *United States v. DeCologero*. DeCologero seeks access to the documents in order to litigate his claim that, by failing to disclose the documents to him, the government violated his due process rights under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In support of this motion, DeCologero states as follows:

**Factual Background**

1. Earlier this year, Paul A. DeCologero was tried in United States District Court on charges of robbery, racketeering, kidnapping, conspiracy to murder, and aiding and abetting murder. The government alleged that DeCologero was the head of a group that robbed drug dealers of drugs and guns, that Steven DiCenso was a member of DeCologero's group, that DiCenso stored some of DeCologero's guns in the apartment of his girlfriend, Aislan Silva (the "Silva guns"), and that after the guns in Ms. Silva's apartment were discovered by ATF agents, Mr. DeCologero had Silva killed.

2. Mr. DeCologero denied the RICO conspiracy charges, denied any involvement in the series of robberies charged, denied that Stephen DiCenso was working for him when DiCenso committed several of those robberies, denied any involvement with the guns found in Ms. Silva's apartment, denied that he had any motive to harm Aislan Silva, and emphatically denied that he had any role in her death.

3. The jury nonetheless returned a verdict finding DeCologero guilty of many of the crimes charged.

4. One of the most hotly contested factual issues at Mr. DeCologero's trial centered on Mr. DeCologero's alleged relationship to the guns found in Ms. Silva's apartment. Mr. DeCologero continues to maintain that the guns did not belong to him, that he had no involvement in their theft, and that he therefore had no motive to, and did not, harm Ms. Silva.

**Procedural History**

5. During the discovery process in this case, *United States v. Bucci*, No. 04-cr-10194-RCL, the government disclosed statements made by various witnesses to investigators from the DEA and other agencies. Some of those statements concerned the guns found at Silva's apartment.

6. On January 31, 2005, this Court issued a protective order precluding any of the parties to the order from disclosing information produced by the government in *United States v. Bucci*.

7. Mr. DeCologero has reason to believe that some of the witness statements disclosed pursuant to the Court's protective order contain evidence that someone other than DeCologero directed the theft of the Silva guns, ordered that the guns be stored in

Silva's apartment, and orchestrated her killing. For example, Mr. DeCologero has reason to believe that statements given by Jon Minotti contain evidence that the Silva guns were stolen and placed in Silva's apartment at the behest of Anthony DeCologero or Anthony Bucci, not Paul DeCologero.

8. None of these witness statements were disclosed to DeCologero in the case, *United States v. DeCologero*, No. 01-cr-10373-RWZ.

9. Moreover, the Court's January 31, 2005 protective order in this case precludes DeCologero from gaining access to the statements from any of the parties to that order.

10. Mr. DeCologero therefore asks this Court to vacate so much of its January 31, 2005 protective order as precludes him or his counsel from gaining access to witness statements disclosed in *United States v. Bucci* that mention Aislan Silva or the guns discovered in her apartment.

**Argument**

11. Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), DeCologero has the right to discover all evidence favorable to the defendant that is "material either to guilt or punishment."

12. Evidence is material as long as it is reasonably likely to "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993).

13.     The witness statements that the government disclosed in *United States v. Bucci*, but withheld in *United States v. DeCologero*, are material to the guilt or innocence of Paul DeCologero.

14.     Testimony that the Silva guns were not stolen, or stored in Silva's apartment, at the direction of Paul DeCologero, but rather at the direction of someone else, would directly contradict the government's assertion that DeCologero had a motive to kill Silva because he feared that she would implicate him in the theft of the Silva guns.

15.     Moreover, such evidence would dramatically impeach a key government witness. The government's case that Paul DeCologero participated in a RICO conspiracy to rob drug dealers was built largely upon the testimony of Stephen DiCenso, Silva's one-time boyfriend, who testified that the guns discovered at Silva's apartment were obtained in a robbery that DeCologero directed, that DeCologero told DiCenso to store the guns in Silva's house, and that DeCologero also directed DiCenso to commit several of the other robberies charged in the indictment. By showing that DiCenso lied when he testified that he was working for Paul DeCologero when he stole the Silva guns and placed them in Silva's house, DeCologero would also have given the jury a reason to doubt that DiCenso was telling the truth when he testified that DeCologero directed the other robberies.

16.     The government's failure to release witness statements suggesting that someone other than DeCologero directed the theft of the Silva guns and ordered the guns stored in Silva's apartment thus denied DeCologero the opportunity to prove both that he had no motive to kill Silva and that he was not involved in any of the other robberies.

17.     Justice demands that DeCologero be given a meaningful opportunity to litigate this substantial claim that the government breached its obligations under *Brady* by

4

failing to disclose in *United States v. DeCologero* materially favorable witness statements that were in its possession and disclosed in *United States v. Bucci*.

18.    Because the government continues to refuse to disclose the witness statements to DeCologero and because the Court's January 31, 2005 order precludes any of the other parties to that order from disclosing the statements to DeCologero, however, DeCologero has not been able to obtain copies of the witness statements. Without such copies, he cannot litigate his *Brady* claim.

### Conclusion

For each of the foregoing reasons, DeCologero respectfully requests that the Court lift its January 31, 2005 protective order enough to allow him a reasonable opportunity to prove his contention that the witness statements disclosed in *United States v. Bucci* should also have been disclosed in *United States v. DeCologero*.

> Respectfully submitted,
>
> PAUL A. DECOLOGERO,
> By his attorneys
>
> /s/ Paige Scott Reed
> Walter B. Prince, BBO #406640
> Paige A. Scott Reed, BBO# 637905
> Prince, Lobel, Glovsky & Tye LLP
> 100 Cambridge Street, Suite 2200
> Boston, MA 02114
> (617) 456-8000

Date: May 23, 2006

"I hereby certify that I have made service of the foregoing document in accordance with the provisions of Fed. R. Civ. P. 5."

/s/ Paige Scott Reed

5