```
 1
 2                        *  *  *  *  *  *  *  *  *
 3              THE COURT:  My job in this case is to determine
 4   what a reasonable sentence is in light of the sentencing
 5   factors.  My view is that the guideline sentence here is
 6   greater than what is necessary; but, on the other hand, my view
 7   is that the sentence recommended by the defendant is
 8   insufficient to meet the sentencing factors, particularly to
 9   the extent the sentencing factors require that I take account
10   the seriousness of the offense, promotion and respect for law,
11   and deterrence.
12              This offense combines the worst of a drug offense
13   with an armed robbery offense.  Mr. Rankin suggested if I
14   looked at this as an armed robbery and take into account the
15   money involved, this is an $80,000 offense.  But it's not an
16   $80,000 offense.  That's the wholesale price of these drugs.
17   This was an offense that was going to lead to further
18   distribution of these drugs.  I don't know what that number is,
19   but ultimately what's involved here is an offense that was
20   going to lead to the distribution of drugs in the North Shore
21   area.  And it was accompanied by this robbery, was achieved by
22   this robbery.
23              And so we have, as I say, a drug offense with all
24   that that implies, and a robbery and all that that implies with
25   an armed man.  And Mr. Jordan is the armed man.  And the
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1    offense is serious, not just because it's a drug offense and an
 2    armed robbery, but also because of where it took place and when
 3    it took place -- Christmas Eve in the parking lot of a
 4    hospital -- with the participants in danger, passersby in
 5    danger if Carlos Ruiz, who is a major drug dealer, had been
 6    armed, as major drug dealers frequently are.
 7             If I sentence Mr. Jordan to the mandatory minimum,
 8    he would get a sentence that anybody committing this offense
 9    would get.  But he isn't anybody committing this offense.  He
10    was a law enforcement officer.  He has a greater obligation
11    than other people.  His job is to promote respect for law.
12    Mr. McNeil is right when he says that people begin to wonder
13    whom they can trust if the law enforcers are the law breakers.
14    And I think the men and women who enforce the laws, doing their
15    jobs conscientiously every day, have reason to fear offenders
16    like Mr. Jordan because it puts them in a bad light and it
17    derogates from the respect that they should be awarded as
18    people who enforce the laws.
19             So the sentence I impose must -- it must take into
20    account the need to deter law enforcement officers in
21    particular from illegal activities.
22             Then I have to take into account the fact that
23    Mr. Jordan was the fulcrum of this offense as it happened.  On
24    Christmas Eve in 2004 --
25             MR. McNEIL:  Three.
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1              THE COURT:  -- 2003 in that parking lot it was
 2   necessary that there be a police officer, and on that occasion,
 3   the $30,000 which Mr. Jordan demanded, by the way, he became a
 4   rent-a-cop, not for the people of Malden, but for the drug
 5   dealers, for Mr. Bucci, Mr. Minotti, Mr. Muolo; he rented
 6   himself out.  He rented out the accouterments of his office to
 7   the drug dealers and he demanded that money right away and he
 8   wouldn't participate if he didn't get it right away.
 9              Now, he was reluctant, and he had some second
10   thoughts, but he did it, and the punishment I think appropriate
11   has to take into account that he was a necessary element of
12   this crime, to the success of this crime, and that he was a
13   necessary element because he was a law enforcement officer who
14   told his supervisor that day he was going to go shopping,
15   Christmas shopping.
16              I do take into account Mr. Jordan's long history as
17   a conscientious, hardworking police officer and the
18   contribution he has made to his community.  That speaks highly
19   of his character, but his character also contains or consists
20   of the events of December 26, 2003, when Mr. Ruiz and his
21   companions showed up at Mr. Minotti's house.  They were an
22   obvious threat to Mr. Minotti.  They showed up there following
23   threatening phone calls.  Ruiz demanding his drugs back or his
24   money.  Mr. Jordan is there.  And when Mr. Minotti says to him,
25   "Here come these guys, they want their drugs or they want their
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   money," his response is: "Call the police."
 2              Now, it's one thing if Mr. Minotti calls the police
 3   and says, "There's five guys on my lawn."  It's quite another
 4   if a brother police officer from the City of Malden calls up to
 5   the Stoneham police and says, "I'm a police officer in the City
 6   of Malden, my informant, Minotti, is being threatened by five
 7   guys."  The whole of Stoneham police would be there.  As I
 8   recall, two officers showed up.  This would have been a serious
 9   matter.  Minotti was facing who knows what.  No one knew what
10   Mr. Ruiz would do.  He's an angry man.  He was angry from the
11   time that drug robbery took place.  No one knew what he would
12   do.  Mr. Jordan skulks away, and that, too, is the character of
13   the man I have to sentence.
14                    *  *  *  *  *  *  *  *  *
```

PDF created with pdfFactory trial version www.pdffactory.com