UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 04-10194-GAO-2

DAVID JORDAN,
Petitioner,

v.

UNITED STATES OF AMERICA,
Respondent.

OPINION AND ORDER
March 1, 2013

O'TOOLE, D.J.

## I.   Procedural History

In 2006 the petitioner David Jordan and his co-defendant Anthony Bucci were convicted of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846, possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in connection with a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Jordan was sentenced to a term of 180 months. Jordan and Bucci both appealed, and their convictions and sentences were affirmed. See United States v. Bucci, 525 F.3d 116, 134 (1st Cir. 2008).

In May 2009 both defendants filed motions seeking collateral relief under 28 U.S.C. § 2255. One of the grounds asserted by them was that their Sixth Amendment right to a public trial had been violated when members of the public were kept out of the courtroom during the jury selection process. After a three day evidentiary hearing, Judge Young denied both petitions. See Bucci v. United States, 677 F. Supp. 2d 406, 420 (D. Mass. 2009). On appeal the First Circuit observed that the "partial courtroom closure" during jury selection "likely violated the Sixth Amendment," Bucci v. United States, 662 F.3d 18, 26 (1st Cir. 2011), but nonetheless declined

to decide the merits of that Sixth Amendment claim. Id. at 27. Rather, the court held that Bucci was barred from raising the claim because he had not raised it at trial and had not, in the § 2255 proceedings, shown the existence of adequate justifying "cause" under the familiar "cause and prejudice" standard for overcoming a procedural default. Id. at 32. However, as to Jordan the court found that, while he also faced the problem of a procedural default as to the claim, because he was neither present nor represented by counsel at the district court hearing at which Bucci's claim was addressed, he was entitled to an evidentiary hearing, and the matter was remanded for that purpose. Id. at 35. The court ruled: "In short, Jordan is entitled to a hearing (and counsel) to consider the issues of 'cause' and 'prejudice' for his procedural default. If Jordan can overcome his procedural default, he is entitled to a new hearing as to the merits of his Sixth Amendment claim." Id.

On remand, the case was reassigned to me, and eventually a two day evidentiary hearing was held on the issue identified by the Court of Appeals. In addition, the parties agreed that testimony given at the prior hearing before Judge Young was to be considered. Other testimony was submitted via stipulation. The parties submitted extensive post-hearing memoranda.

## II.     Factual Findings

Based on the evidence submitted, I make the following findings of fact:

Jury empanelment for the Bucci-Jordan trial began on Monday, March 20, 2006. The trial took place in Courtroom 11 before Judge Lindsay. The public seating area in Courtroom 11 has fourteen benches, each of which normally seats four people but can hold up to five. The courtroom deputy clerk, Lisa Hourihan, had arranged to obtain a larger venire than usual because the trial involved two defendants, one of whom (Jordan) was a police officer. Ms. Hourihan ordered a panel of sixty-five jurors.

On the day of the trial, the official court reporter for the session, Deborah Joyce, unlocked the doors to the courtroom prior to 9:00 a.m. When the doors were unlocked, members of the public, including the defendants' family and friends, took seats in the public area of the courtroom. Between the opening of the courtroom and the entry of the jury, trial counsel, the defendants, and courtroom staff all entered and set up for the proceedings. Judge Lindsay was not in the courtroom and did not enter until the jury venire was present, about mid-morning.

When the venire arrived at the courtroom, there were between twelve and twenty-five spectators seated in the courtroom. Because of the size of the venire, Ms. Hourihan asked spectators sitting in the public area to leave the courtroom to make room for the venire. A person associated with the Bucci family complained to Ms. Hourihan that family members had a right to be present for the empanelment process. After consulting with Judge Lindsay, who had not yet taken the bench, Ms. Hourihan invited Bucci's mother, his wife, and Jordan's wife back into the courtroom, apparently filling one row of seats in the gallery, where they sat for the jury selection. The venire then entered the courtroom and filled the remaining seats in the public section. No members of the venire were seated in the jury box. Ms. Hourihan then called the court to order, Judge Lindsay took the bench, and the proceedings began at 10:40 a.m., the time at which the official transcript began to be recorded.

Judge Lindsay conducted a voir dire of the entire panel, after which the first twelve venire members were seated in the jury box. There followed a process of examining individual jurors about issues that emerged from the voir dire and excusing some for cause. The first jurors left the courtroom at approximately 11:40 a.m. This was followed by peremptory challenges and more jurors being excused. This process continued until a full jury had been selected. Between the start of the proceeding and the 1:15 p.m. lunch recess, twenty-one jurors left the courtroom.

As jurors left, there was space for additional members of the public to be admitted to the courtroom. Apparently following what they regarded as the clerk's prior instructions, court security officers did not allow additional members of the public to enter the courtroom before the court recessed at 1:15 p.m. The court returned from recess at 2:15 p.m. It is not clear whether the public was restricted from entering the courtroom for the afternoon session; there was conflicting evidence on the point and no reliable way to resolve the conflict.

Jordan was represented by Thomas Drechsler, who was assisted by Maria Luise. Bucci was represented by Michael Natola and Anthony Rossi. Sometime before the venire arrived at the courtroom – estimates varied between thirty minutes and an hour – the attorneys were presented with a list of prospective jurors that contained some limited information about them. The attorneys, including Drechsler in particular, began studying the list in preparation for jury selection.

The evidence was ambiguous as to whether Drechsler was explicitly advised by anyone that public access to the courtroom was being limited to make room for the venire. For his part, Drechsler testified he had no recollection one way or the other as to whether he was told of the arrangement by Natola or anyone else. Natola, testified he was told of the arrangement and thought that he in turn told Drechsler.  However, Natola's recollection of events was not consistent. For example, he had first said that Judge Lindsay had himself ordered the courtroom closure from the bench. Neither the transcript nor anyone else's testimony supported that proposition. Natola later said he had been mistaken and now recalled it was the clerk who made the announcement. I do not doubt Natola's good faith, but I do conclude that his recollection of the events of the empanelment is faulty and unreliable. Accordingly, I am not able to find, as

contended by the government, that Natola expressly told Drechsler about the limitation on attendance in the courtroom.

That does not mean, however, that Drechsler was unaware of it. On the contrary, I find that he was. Given what appears from the evidentiary record to be an undisputed sequence of events, it is virtually inconceivable that any person present in the courtroom, as the lawyers and their clients were, would not have observed that at some point all the spectators in the gallery got up and left together and shortly thereafter the venire arrived and filled the gallery but for one bench. Even if he did not hear the clerk announce the clearing of the courtroom, an experienced trial attorney like Drechsler would have understood that it was not just a curious coincidence that all the spectators exited at once and that shortly afterwards the gallery was filled with the venire. Indeed, Natola testified that he did not think much about the clearing of a spectator seating section to make room for a jury venire because it was a common event in his experience as a trial lawyer. It is also inconceivable that Jordan himself was not aware that during empanelment his wife was seated in the first row of the gallery a few feet from where he was sitting at counsel table.

### III.   Discussion

Jordan asks this Court to grant his § 2255 motion because the "partial closure" of the courtroom during jury selection violated his Sixth Amendment right to a public trial. It is undisputed that Jordan's attorney did not object to the "partial closure" at trial, and consequently his Sixth Amendment claim is procedurally defaulted. See Bucci 662 F.3d at 29. Collateral relief under Section 2255 is generally unavailable on the basis of a claim that has been procedurally defaulted. Berthoff v. United States, 308 F.3d 124, 127-28 (1st Cir. 2002). To overcome the procedural default the petitioner must show both "cause" for having failed to raise the claim

timely and "actual prejudice" resulting from the claimed error. United States v. Frady, 456 U.S. 152, 167-68 (1982).

Cause can be established if an "objective factor external to the defense" made "the factual or legal basis for a claim was not reasonably available to counsel." Murray v. Carrier, 477 U.S. 478, 488 (1986). Jordan argues that his counsel was reasonably unaware of the closure because it was accomplished in such a way that it was not brought to counsel's attention. That proposition is not supported by the evidence. There was nothing surreptitious about the clerk's direction to clear the gallery of spectators to make room for the larger than usual venire. As noted above, it would be hard for anyone present in the courtroom not to have noticed the mass exodus of spectators followed by the room-filling entry of the venire. But even indulging the hypothesis that counsel was oblivious to the clearing of the courtroom, the evidence does not show any "objective factor external to the defense" that would have prevented him from seeing what anyone else in the courtroom could have seen. The Supreme Court has recognized that cause can be found where counsel did not know and with reasonable diligence could not have discovered the factual predicate for the claim at the time of the alleged procedural default. See Strickler v. Greene, 527 U.S. 263, 283-90 (1999).[1] If Drechsler was unaware that the gallery was cleared by

---

[1] See Williams v. Taylor, 529 U.S. 420 (2000) (court found that petitioner had cause for procedural default on juror bias and prosecutorial misconduct claim where juror did not truthfully answer judges venire when asked if she was related to any of the witnesses, juror had been married to the lead witness, and whether she had been represented by any of the attorneys, prosecutor represented juror in divorce because that information could not have been discovered through reasonable means); Strickler, 527 U.S. at 283-90 (1999) (prosecutor's suppression of documents favorable to defense "impeded trial counsel's access to the factual basis for making a Brady claim" and also deterred state postconviction counsel from raising claim in state postconviction proceedings); Amadeo v. Zant, 486 U.S. 214, 222 (1988) ("If the district attorney's memorandum [revealing a constitutional violation] was not reasonably discoverable because it was concealed by Putnam County officials, and if that concealment, rather than tactical considerations, was the reason for the failure of petitioner's lawyers to raise the challenge . . . then petitioner established ample cause to excuse his procedural default.").

order of the clerk to make room for the jury, a factual proposition I do not accept, it was not because of some external interference.

Jordan also argues that if counsel *was* aware of the partial courtroom closure, he was ineffective in failing to object, and this ineffectiveness was sufficient "cause" to excuse the default. Alternatively, he argues that counsel's ineffectiveness is itself a separate ground for granting § 2255 relief. A claim for ineffective assistance of counsel may be raised for the first time on collateral review. See Massaro v. United States, 538 U.S. 500, 505 (2003) ("ineffective-assistance claims ordinarily will be litigated in the first instance in the district court, the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial.").

Ineffective assistance of counsel claims are subject to the familiar Strickland standard. Under Strickland, a defense counsel's performance will be found constitutionally ineffective only if the defendant can show (a) that his counsel's performance "fell below an objective standard of reasonableness," and (b) that he was prejudiced as a result of the deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984).

Jordan's argument for a finding of ineffective assistance of counsel has effectively been foreclosed by the First Circuit's opinion in Bucci, 662 F.3d at 32. The court there rejected Bucci's similar claim of ineffectiveness: "Under these circumstances, Bucci's counsel's failure to raise the objection at trial did not fall below the 'objective standard of reasonableness' required to establish constitutionally ineffective assistance under Strickland." Id. at 32. In arriving at its decision in Bucci, the First Circuit distinguished so-called "partial" courtroom

closures from complete courtroom closures.[2] The court had held in Owens v. United States, 483 F.3d 48 (1st Cir. 2007), that counsel's failure to object to a complete courtroom closure for a full day creates a presumption of deficient performance. In Bucci, however, the court held that where there is only a "partial closure," such a presumption does not arise. Bucci, 662 F.3d at 30-31. In the absence of a presumption, the court examined the facts under the usual Strickland standard of review and concluded the following:

> [C]ompetent defense counsel in this case could have reasonably concluded that even a successful Sixth Amendment challenge to the partial courtroom closure would have done little to increase the defense's chances of securing a not-guilty verdict. As such, an objectively reasonable defense counsel could have made the strategic decision to forego the Sixth Amendment objection in favor of conserving the defense's limited resources for other important issues. Rather than raising a complicated constitutional issue that might require briefing and a hearing while offering limited upside to the defendant, the defense counsel could have reasonably believed his client's interests would be best served by moving the trial along and focusing on the immediate task of jury selection.

Id. at 32. There is no reason why Jordan's parallel claim calls for a different result.

In any event, it is apparent from the evidence that a choice by counsel not to make an issue of the limitation on the number of members of the public who were admitted to the courtroom was well within the range of reasonable judgment. First, it is undeniable that some members of the public – family members of the defendants – were present throughout the jury selection. Second, counsel were all engaged in what could easily be thought to be a task with higher priority – examining the jury list in advance of the selection process. In addition to a Sixth

---

[2] The term "partial closure" is rather inapt to describe what happened in this case. If the courtroom was "partially closed" because some members of the public who wished to be present were excluded, it was also at the same time "partially open" because some members of the public who wished to be present were seated in the gallery, just as a glass filled to the midpoint is at once both half empty and half full. This is substantially different from a situation where some part of the trial, such as jury selection, see Presley v. Georgia, 558 U.S. 209 (2010), and Owens v. United States, 483 F.3d 48 (1st Cir. 2007), or a hearing on a motion to suppress evidence, see Waller v. Georgia, 467 U.S. 39 (1984), is completely closed to all members of the public.

Amendment right to a public trial, Jordan also had a Sixth Amendment right to a trial before an impartial jury. Counsel can hardly be faulted for giving some priority to the latter, especially where a claim that the former was infringed because too few members of the public were present could reasonably have been thought to be of doubtful merit. Therefore, as in Bucci, 662 F.3d at 32, I find that a failure by Drechsler to object to the "partial courtroom closure" during jury selection, of which I find he was aware, does not fall below the objective standard of reasonableness required to establish constitutionally ineffective assistance under Strickland.

Because Jordan has not shown sufficient cause to overcome his procedural default, it is not necessary to address the question of prejudice or whether prejudice is presumed under the doctrine of structural error.

## IV. Conclusion

For the reasons stated herein, the petitioner's Motion to Vacate pursuant to § 2255 (dkt. no. 420) is DENIED.

Because Jordan has not made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge